# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DAVID POWELL,

    Plaintiff,

v.

PENTAGON FEDERAL CREDIT UNION,

    Defendant.

No. 10 CV 785
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In 2008, Plaintiff David Powell ("Powell" or "Plaintiff") had a Visa Account with Defendant Pentagon Federal Credit Union ("Pentagon" or "Defendant"). Pursuant to the Cardholder Agreement ("Agreement") that governed the relationship, the account could be terminated under the following circumstances: (1) illegal use of the card; (2) Pentagon's adverse reevaluation of Powell's creditworthiness; (3) false or misleading statements for an advance; (4) withdrawal of consent to Pentagon's statutory lien on protected funds; or (5) default as a result of (a) failure to make timely payments, (b) insolvency or a bankruptcy filing, (c) death or incompetence, (d) judgment or garnishment against Powell's property, or (e) Pentagon's good faith determination that its or Powell's obligations to one another, or Powell's ability to repay Pentagon or otherwise perform his obligations, were unsafe or insecure.

In his second amended complaint Powell alleges that in early November 2008, Pentagon sent him a letter stating that his Visa Account was closed "based on prior delinquency with [Pentagon] and/or information reflected on a report from the following credit reporting agency: Equifax[.]" Pentagon notified Powell of his right under the Fair Credit Reporting Act, 15 U.S.C.

§ 1681, *et seq.*, ("FCRA"), to receive a free copy of his credit file and dispute the accuracy of the credit report that was the basis for the decision to close the account.

Another letter from Pentagon followed, apparently in response to a letter from Powell. In the second letter, Pentagon explained that:

> Periodically, Pentagon Federal Credit Union reviews line of credit accounts and the member's current credit standing. If, in the judgment of the Pentagon Federal Credit Union's Credit Risk and Policy Department, such a review suggests account activity or trends that could jeopardize the repayment of the balance owed of future use of the account, the line of credit may be closed.
>
> In your case, our decision to close your Visa account was based on information from your credit report. We encourage you to obtain a free copy of your credit report to check its accuracy. If there are errors on the report or if there has been a recent change to this information, you are welcome to apply for a new account with evidence of the corrections or changes.

In his complaint, Powell claims that the credit report referenced in the second letter is not the Equifax report referenced in the first, but rather an "investigative report" compiled by "Pentagon or other third-parties based on interviews of, or other gathering of information from Pentagon employees and other third-parties who have information concerning Powell, his account activity," and the unidentified trends that might jeopardize repayment of the account balance. Powell complains that the termination of his account is unlawful because Powell was not delinquent on the account, and the consumer reports from the relevant time frame reveal no "significant evidence" of any account activity that could jeopardize repayment. Powell also contends that he was not given 15 days notice prior to the account closure, as he maintains is required by the agreement.

Plaintiff alleges the following counts in his second amended complaint: (1) Breach of Contract; (2) Violations of the FCRA; (3) Violations of the Equal Credit Opportunity Act, 15

U.S.C. 1691, et seq. ("ECOA"); and (4) Violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505 ("ICFA"). Defendant now moves to dismiss Plaintiff's complaint in its entirety.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of Plaintiff. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiff, for its part, must do more than solely recite the elements for a violation; it must plead with sufficient particularity so that its right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead its facts so that, when accepted as true, they show the plausibility of its claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiff must do more than plead facts that are "consistent with Defendant's liability" because that only shows the possibility, not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

## III. DISCUSSION

### A. Breach of Contract

To successfully plead a breach of contract claim, Plaintiffs must allege (1) the existence of a valid contract; (2) Plaintiffs' performance of their contractual obligations; (3) breach by Defendant; and (4) resulting damages. *Akinyemi v. JP Morgan Chase Bank, N.A.*, 908 N.E.2d 163, 168 (Ill. App. 2009). "Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms." *Van Der Molen v. Washington Mut.*

3

*Finance, Inc.*, 835 NE.2d 61, 69 (Ill. App. 2005). Pentagon argues that Powell's claim should be dismissed because he fails to adequately plead a breach of the agreement by Pentagon.

In his second amended complaint, Plaintiff alleges that Pentagon closed his account in bad faith, and that the stated reason for the closing - Powell's credit report - is essentially a pretext. Instead, he asserts, Pentagon relied upon an "investigative report compiled by Pentagon or other third-parties based on interviews of, or other gathering of information from Pentagon employees and other third-parties who have information concerning Powell, his account activity, and his trends as a consumer." Defendant points out that the determination of whether Pentagon considers Plaintiff's account "unsafe or insecure" is within Pentagon's discretion, and Pentagon has the prerogative to examine factors it deems relevant to the determination. However, the agreement does require that Pentagon conduct its examination in "good faith." According to Plaintiff, Pentagon has basically abused its power to determine how and whether Powell's account is "unsafe or insecure" and should be closed. Because Powell presents allegations that could have indeed taken place, his claim is allowed to go forward. *See Swanson v. Citibank, N.A.*, - - F.3d - - - -, No. 10-1122, 2010 WL 2977297, at *43 (7th Cir. July 30, 2010) (On a motion to dismiss, the court should examine whether the allegations in the complaint could have happened, not whether they did happen.).

## B. Violations of the FCRA

Section 1681d of the FCRA requires additional notices to consumers when a person procures or causes to be prepared an investigative consumer report on that consumer. The party procuring the report must disclose to the consumer in writing "that an investigative consumer report including information as to his character, general reputation, personal characteristics, and

4

mode of living, whichever are applicable, may be made[.]" § 1681d(a)(1). Section 1681a(e) defines an investigative consumer report as:

> consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

Defendant moves to dismiss this count on the ground that Plaintiff has failed to adequately allege that Pentagon relied on an investigative consumer report.

In his second amended complaint, Plaintiff alleges that "Pentagon's application of unannounced termination criteria, its analysis of Powell based on an unidentified 'credit report' containing personal information on Powell obtained from Pentagon employees and others, and its conclusion based on its secret criteria and information, constitute an 'investigative consumer report' on Powell[.]" Basically, Powell is alleging that Pentagon based its decision to close the account on its own investigative consumer report. Powell points out that in its second letter, Pentagon makes reference to a "credit report" which, Plaintiff maintains, is not the same as the aforementioned "report from the [ ] credit reporting agency: Equifax[.]" He alleges that the "credit report" referenced in the second letter is in fact an "investigative consumer report," the initiation of which Pentagon failed to inform him.

5

While this interpretation seems to be a stretch of the imagination,[1] Plaintiff's claim fails for an independent reason. The FCRA

> regulates "consumer report[s]" issued by "consumer reporting agenc[ies]." 15 U.S.C. § 1681a(d)(1). A consumer reporting agency, so far as pertains to this case, is "any person which ... regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." § 1681a(f).

*Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 686 (7th Cir. 2008). Plaintiff has made no allegation that Pentagon is indeed a consumer reporting agency, and instead identifies Pentagon as "a federally chartered financial institution." The allegations refer only to investigations made internally, and there is no mention of any regular practice by Pentagon of evaluating consumer credit information "for the purpose of furnishing consumer reports to third parties." Even taking Plaintiff's allegations as true, any internal investigation as to Powell's information was used by Pentagon to make a determination as to its *own* extension of credit to Powell. For these reasons, Plaintiff fails to adequately allege violations of the FCRA, and this claim must be dismissed.

**C. Violations of the ECOA**

The ECOA prohibits creditors from discriminating against applicants for credit on the basis of race, color, religion, national origin, sex or marital status, or age, or because the applicant receives some or all of his or her income from a public assistance program. 41 U.S.C. § 1691(a). It also prohibits discrimination based on the applicant's good faith exercise of any

---

[1] It is difficult to see how, after reading the two letters attached by Plaintiff, Pentagon's reference in the second letter to a credit report was anything other than a reference to the Equifax report discussed in the letter. This is especially so in light of the fact that the sentence preceding the mention in the second letter encourages Plaintiff "to obtain a free copy of your credit report to check its accuracy."

right under the act. Further, the statute requires that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." § 1691(d)(2). In order to satisfy this requirement, the creditor may either provide a written statement of specific reasons for the action or give written notice of the action which discloses the applicant's right to a statement of reasons. § 1691(d)(2)-(3). Powell alleges that in closing his account, Defendant has violated the ECOA by discriminating against him based on income from railroad disability, as well as his vigorous assertion of rights here and in other cases. Defendant moves to dismiss this claim on the grounds that (1) Powell was not an "applicant" as defined by the statute; and (2) the exhibits submitted by Powell contradict the pleadings.

Section 1691a(b) defines an applicant as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." Pentagon argues that Powell was not applicant, in that he was neither applying for new credit nor a renewal of credit. He had an existing account with Pentagon at the time of the closure. Powell maintains that such a narrow interpretation is inconsistent with the definition of an adverse action under the statute. In § 1691(d)(6), an adverse action is defined as

> a denial or *revocation* of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

(Emphasis added).

Applying the term "applicant" as narrowly as Defendant suggests would preclude a plaintiff with an existing account from bringing a claim for the discriminatory revocation of that account.[2] The notice requirements of the ECOA serve two purposes: to discourage discrimination and educate consumers regarding deficiencies in their credit status. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 977 (7th Cir. 2004).[3] These functions seem

---

[2] Pentagon argues that

It is entirely possible for a person to have current credit and to be an applicant for additional credit from the same creditor, which then results in the revocation of the current credit. Moreover, the creditor need not be the same. An applicant for credit with one creditor suffers an adverse action if that application causes revocation of current credit with a different creditor. In either case, the status of being an "applicant" is consistent with a "revocation of credit," and the term "applicant" retains its ordinary meaning.

But Pentagon provides little support for its interpretation that a formal application must somehow be involved in the facts alleged in order to state a claim, and the Congressional intent in passing the statute in no way distinguishes persons whose credit has been revoked upon the filing of a formal application with a current or different creditor from those who have their current credit revoked without the associated filing of an application. Pentagon points to nothing that suggests that Congress' intent to discourage discrimination against applicants somehow ceases when the alleged discrimination is against existing credit customers.

[3] Congress viewed the ECOA notice requirement as

a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

8

equally applicable and important to both the refusal of an application for an extension of credit, as well as the revocation of an existing credit account. To exclude discriminatory revocations of existing credit accounts from the list of actionable adverse actions would undermine in part the purpose of the statute. Furthermore, the Federal Reserve Board defines an "applicant" as one "who requests or *who has received an extension of credit* from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. §202.2(e) (emphasis added). "The ECOA delegated to the Federal Reserve Board the power to implement regulations in furtherance of carrying out the Act's purpose[,]" and for this reason, its regulations are entitled to substantial deference. *Treadway*, 362 F.3d 971 at n.3, *see also Nevarez v. O'Connor Chevrolet, Inc.*, 303 F. Supp. 2d 927, 938 (N.D. Ill. 2004).

Here, Plaintiff is a person who has received an extension of credit from a creditor, Pentagon. He falls within the Federal Reserve Board's definition of an "applicant," and such a definition is consistent with Congress' intent in passing the statute. Defendant's motion to dismiss on this ground is denied.

Defendant further moves to dismiss Powell's ECOA claim based on the language of the two letters from Pentagon regarding the closure of the account. According to Pentagon, the letters, especially when read together, make it clear that Powell's account was closed due to information in his Equifax credit report, and he pleads no facts to support his allegation of discrimination. But Powell's complaint identifies the type of discrimination he thinks occurred (discrimination based on his railroad disability income and assertion of rights), and when it

---

S.Rep. No. 94-589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News, pp. 403, 406.

occurred (in connection with the 2008 closing of his credit account). This is sufficient to withstand Defendant's motion to dismiss, and the motion as to this claim is denied.[4] *Swanson v. Citibank, N.A.*, 2010 WL 2977297, at *4.

**D. Violations of the ICFA**

The ICFA prohibits "unfair or deceptive acts or practices[.]" 815 ILL. COMP. STAT. 505/2.

> To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (citation omitted). Plaintiff alleges that Pentagon's misrepresentations and omissions with regard to its reasons for closing his account constitute prohibited deceptive practices under the ICFA. Defendant moves to dismiss this claim on the ground that Plaintiff fails to adequately allege any of the required elements.

Plaintiff does allege a deceptive act or practice by Defendant, namely misrepresenting the reason for termination of his credit account. Plaintiff also alleges that the misrepresentation were meant by Defendant to induce Powell to accept the closure of his account "without dispute and [to] forego hidden consumer protection claims." However, the element of proximate cause element as plead is problematic. "[T]o properly plead the element of proximate causation in a

---

[4] Although the letters do suggest that Pentagon gave appropriate notice to Powell under the ECOA, Powell maintains that the reason stated in the letter, i.e. the credit report, is inaccurate and misleading. ECOA claims on this ground are actionable. *See Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143 (5th Cir. 1983), and 12 C.F.R. Pt. 202, Supp I, section 202.9, para. 9(b)(2), Official Staff Interpretation ("the specific reasons disclosed under §§ 202.9(a)(2) and (b)(2) must relate to and accurately describe the factors actually considered or scored by a creditor.").

private cause of action for deceptive advertising brought under the [ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002). Powell states that he was, in fact, deceived by Pentagon's actions when, in state court, he alleged only violations of the FCRA. Powell seems to be saying that as a result of Defendant's deceptive practice, he was unaware of his potential consumer protection claims. But Powell was clearly not deceived into accepting the closure without dispute as he has brought suit against Defendant over the very issue. Furthermore, as part of his suit he has alleged a consumer protection claim pursuant to the ICFA, so he was not deceived into foregoing such claims. Because Plaintiff has failed to adequately allege proximate cause, his ICFA is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part as to Plaintiff's ICFA and FCRA claims, and denied in part as to Plaintiff's breach of contract and ECOA claims.

ENTER:

James B. Zagel
United States District Judge

DATE: September 17, 2010